IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JONATHAN FERNALD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:22-cv-02761-JTF-cgc |
| | ) |
| JFE FRANCHISING, INC. d/b/a | ) |
| SNOWFOX, | ) |
| | ) |
|     Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant JFE Franchising, Inc.'s ("JFE") Motion to Dismiss, filed on December 1, 2022. (ECF No. 10.) Plaintiff Jonathan Fernald responded to the Motion on January 27, 2023. (ECF No. 13.) For the reasons set forth below, JFE's Motion to Dismiss is **GRANTED.**

        **I.**        **FACTUAL AND PROCEDURAL HISTORY**

The following facts are taken from Fernald's Complaint, which was properly removed to this Court on November 3, 2022. (ECF No. 1-1.) JFE is a Texas corporation that served as the franchisor of a sushi business operating out of the Kroger grocery store located at 240 New Byhalia Road in Collierville, Tennessee. (*Id.* at 1-2.) Fernald was an employee at that Kroger location at all relevant times, including on September 23, 2021. (*Id.* at 2.)

Franchisee Uk Thang worked at this JFE franchise. (*Id.*) Thang's franchise, a "Snowfox" location, operated out of the Kroger pursuant to a formal agreement. (*Id.*) According to the Complaint, "Thang had a history of anti-social, antagonistic, volatile unstable, threatening and

predictably dangerous behavior at all times pertinent hereto." (*Id.*) This included a "history of confrontations and disagreements with other individuals including employees and agents of Kroger and its invitees." (*Id.*)

On the morning of September 23, 2021, Thang was called into "the manager's office" after an incident in the store. (ECF No. 1-1, 3.) Thang was asked to leave Kroger after this meeting, at which point he "responded angrily displaying great propensity to act violently and dangerously." (*Id.*) After Kroger employees threatened to contact law enforcement, Thang left. (*Id.*) Soon thereafter, Thang returned to the Kroger, carrying "two pistols and full-length military style rifle[s] as well as high-capacity magazines and substantial amounts of ammunition." (*Id.*) Thang then began shooting indiscriminately at customers and employees. (*Id.*) The incident, later described as a mass shooting event, resulted in 14 injuries and two deaths, including Thang.[1] Fernald was shot in his right flank and back. (*Id.*)

Fernald alleges that "at no time did Defendant warn of or otherwise take reasonable action to prevent Thang from causing or mitigating his ability to cause such harm when they had the means, ability and reasonable constructive and/or actual notice to do so." (ECF No. 1-1, 3.) The Complaint brings four counts: Negligence, Negligent Hiring, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. (*Id.* at 4-5.) Fernald seeks damages for physical and emotional pain and suffering, physical disfigurement, medical bills and expenses, loss of enjoyment and quality of life, and lost wages and earning capacity. (*Id.* at 5.) Fernald initially filed in Shelby County Circuit Court before JFE removed the case to this Court. (ECF No. 1.) JFE filed the present Motion to Dismiss on December 1, 2022, arguing that Fernald had failed to allege facts under which they could be found liable. (ECF No. 10-1.)

---

[1] https://www.usatoday.com/story/news/nation/2021/09/24/collierville-kroger-shooting-tennessee-gunman-victim-identified/5841534001/

2

## II. LEGAL STANDARD

When ruling on a Motion to Dismiss, courts must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Royal Truck & Trailer Sales and Service, Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss . . . without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). The ultimate question when considering a Motion to Dismiss is whether the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations are not the same as legal conclusions; they must be sufficient "to give notice to the defendant as to what claims are alleged," and to make a claim "more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592, F.3d 718, 722 (6th Cir. 2010). Avoiding dismissal requires that "a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

## III. LEGAL ANALYSIS

Fernald's Complaint brings four counts. JFE's Motion seeks to dismiss all of them and addresses each individually. The Court will do so as well.

1. *Negligence and Negligent Hiring*

Fernald's negligent hiring claim will be addressed first due to the clarity its resolution can lend to other claims. Fernald alleges that "Defendant's by and through its agents, servants and employees, through investigation and background examination, knew or should have known of

3

Thang's dangerous propensities as an unfit employee/franchisee. Defendants failed to use reasonable care in investigation, recruiting, and firing Thang and failed to provide adequate warning to plaintiff." (ECF No. 1-1, 4.) Further, under his claim of "Negligence," Fernald states that JFE failed to adequately screen and warn of the propensity for violence and harm [of] Thang, their franchisee[] and/or agent[]." (*Id.*) JFE correctly notes that these are all "just different characterizations of a claim for 'negligent hiring, supervision, or retention.'" (ECF No. 10-1, 10.) In Tennessee, a claim of negligent hiring, supervision, or retention of an employee may lie when "the plaintiff can establish (1) 'the elements of a negligence claim' and (2) 'that the employer had knowledge of the employee's unfitness for the job.'" *Gunter v. Estate of Armstrong*, 600 S.W.3d 916, 928 (Tenn. Ct. App. 2019) (quoting *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)).

The Complaint alleges that Thang was in a "franchisor/franchisee" relationship with JFE. (ECF No. 1-1, 2.) In Tennessee, "neither a franchisee nor a franchisee's employee shall be deemed to be an employee of the franchisor for any purpose." Tenn. Code Ann. § 50-1-208. Due to the lack of an employment relationship between Thang and JFE, the company cannot be found liable for any negligent hiring, supervision, or retention of him. *See Faulkner v. Country Inn & Suites By Radisson, Inc.*, No. 3:19-cv-00137, 2021 WL 1143856, at *9 (M.D. Tenn. Mar. 24, 2021). Fernald argues that the *Faulkner* case was dealing with a Motion for Summary Judgment where the court had already determined "that the franchisor did not have sufficient control over the day-to-day activities of its franchisee" for liability to attach, and that the analysis is inapplicable here. (ECF No. 13, 4.) This argument fails for two reasons. First, it fails to address the clear text of the statute, regardless of its application in the *Faulkner* case. Second, it confuses direct liability for negligent hiring, which is alleged in Fernald's complaint, with vicarious liability under agency principles.

Such a theory of liability would involve closely examining the control a franchisor exercises over a franchisee to determine if they should be vicariously liable for the torts of the franchisee. *See Faulkner*, 2021 WL 1143856, at *6-7; *see also Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 752 (W.D. Tenn. 2012); *Doe v. Andrews*, No. 3:15-CV-1127, 2017 WL 3443598, at *6 (M.D. Tenn. Aug. 9, 2017). Fernald has not sued the franchisee and does not allege a theory of vicarious liability. Tennessee law precludes JFE's direct liability for the negligent hiring of Thang on these facts, as the two are not in an employer/employee relationship. Accordingly, the claim for negligent hiring must be **DISMISSED**.

The only remaining claim of negligence is a claim of basic negligence. Under Tennessee law, "[a] claim for negligence cannot succeed in the absence of any of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause." *Riggs v. Wright*, 510 S.W.3d 421, 426 (Tenn. Ct. App. 2016). A plaintiff need not explicitly and formally allege all elements of a negligence claim in their complaint to survive a motion to dismiss. Instead, they "must allege facts to show" these elements. *Robinson v. SunTrust Bank*, No. 22-2117-JPM-tmp, 2022 WL 2286774, at *3 (W.D. Tenn. Jun 2, 2022) (citing *West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)).

JFE states that because Fernald did not identify a duty, or "specifically allege JFE owed Plaintiff any duty," his negligence claim must be dismissed. (ECF No. 10-1, 5.) This argument demands too much. Duty is a legal concept. Case law notes that "whether the defendant owed the plaintiffs a duty of care is a question of law to be determined by the court." *West*, 172 S.W.3d at 550 (citing *Burroughs v. Magee*, 118 S.W.3d 323, 327 (Tenn. 2003)). The Court answers this question at the motion to dismiss stage by determining whether the facts alleged could plausibly

support the conclusion that a duty was owed when viewed in the light most favorable to the plaintiff. Prior cases have often used imprecise language allowing for an overly strict standard under which a plaintiff must specifically allege the legal elements of a negligence claim in their complaint. This is not the purpose of a complaint. A complaint must merely "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678). With this clarified, the Court may address JFE's two other arguments as to why the Complaint fails to state a claim for negligence. First, they argue that the Complaint "fails to demonstrate how or why JFE owed [Fernald] any duty of care," and how they would have breached such a duty. (ECF No. 10-1, 5.) Second, they argue that the Complaint fails to allege that JFE was the direct or proximate cause of Fernald's injuries. (*Id.* at 7.)

Fernald does not factually specify the duty he believes JFE owed him. JFE and Fernald had no formal relationship, a common way such duties arise. Generally speaking, "duty is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm." *Shacklett v. Rose*, No. M2017-01650-COA-R3-CV, 2018 WL 2074102, at * 4 (Tenn. Ct. App. May 2, 2018) (quoting *Howard v. FMS, Inc.*, No. 01A01-9709-CV-00479, 1998 WL 195960, at *2 (Tenn. Ct. App. Apr. 24, 1998)). "The general duty of care, however, does not include an affirmative duty to act for the protection of a third party 'unless the defendant stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" *Riggs*, 510 S.W.3d at 427 (quoting *Biscan v. Brown*, 160 S.W.3d 462, 478-79 (Tenn. 2005)).

As discussed above, JFE and Thang stood as franchisor/franchisee, which under Tennessee law did not impose a special duty regarding the need to warn, screen, or supervise. The complaint

6

does not allege any special relationship between JFE and Fernald. However, Tennessee law does "generally impose a duty upon businesses to take reasonable measures to protect their customers from foreseeable criminal attacks." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 899 (Tenn. 1996). The duty arises "if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time." *Id.* at 902. Foreseeability is not a set determination. "As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises." *McClung*, 937 S.W.2d at 902. Further the "the degree of foreseeability needed to establish a duty decreases in proportion to the magnitude of the foreseeable harm[;]" the greater the danger, the less directly foreseeable an event needs to be for liability to attach. *Id.* (quoting *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994)). The question then is whether JFE had knew or had reason to know that the shooting was reasonably foreseeable under this standard.

   The Court agrees with JFE that the facts in the Complaint, taken in the light most favorable to Fernald, do not establish that JFE owed Fernald a duty of care. The harm from a mass shooting event cannot be overstated. Mass shootings exemplify extreme violence and often result in horrific carnage. These acts of violence are becoming more numerous and all-too common. Needless to say, the direct harms caused by mass shooting events go beyond just the physical violence they cause. The mental and emotional damage done to survivors and family members of those killed cannot be overlooked. But this Complaint does not allege JFE had any forewarning that such a horrific event would occur. It fails to establish a factual basis by which JFE should have anticipated Thang's actions. And although the complaint alleges Thang had a history of volatile behavior and

confrontations with Kroger employees and customers, it does not allege JFE was aware of this past or these confrontations. *Id.* The Complaint notes that on the morning of the shooting, Thang was reprimanded by a Kroger manager, asked to leave, and only left "after agents and/or employees of Kroger announced their intent to contact law enforcement." (ECF No. 1-1, 2-3.) The Complaint does not allege that JFE was aware of this confrontation, but that Kroger and Kroger employees were. Only in one sentence (a conclusory statement that "at all times pertinent hereto, Defendant knew or should have known that Thang presented a danger") is JFE's knowledge, action, or omission alluded to. But this amounts to a legal conclusion unsupported by the facts alleged in the complaint. (*Id.* at 3.) In short, the Complaint does not allege any facts to show that the shooting was foreseeable to JFE, nor that JFE owed a duty to Fernald to take actions to prevent it.

JFE's second argument follows from the same problem of foreseeability. They argue that the independent intervening cause doctrine, which "provides that a negligent actor will be relieved from liability when a new, independent and unforeseen cause intervenes to produce a result that the negligent actor could not have reasonably foreseen[,]" breaks the chain of causation in Fernald's complaint. *Rains v. Bend of the River*, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003). The doctrine applies when "the intervening act (1) was sufficient by itself to cause the injury, (2) was not reasonably foreseeable to the negligent actor, and (3) was not a normal response to the negligent actor's conduct." *Id.* (citing *Waste Mgmt., Inc. of Tenn. v. South Cent. Bell Tel. Co.*, 15 S.W. 3d 425, 432 (Tenn. Ct. App. 1997)). Thang's mass shooting was indisputably sufficient to cause the injury and not a normal response to JFE's conduct, although the complaint is unclear about any conduct JFE engaged in beyond an alleged failure to screen and supervise. As stated above, Tennessee law precludes direct liability on that point. Only prong two is in dispute, and "as a general matter, an actor has much less reason to anticipate intentional misconduct than negligence." *Id.*

(citing Restatement (Second) of Torts § 302B cmt. d (1965)). Without allegations that JFE was aware of Thang's outburst the morning of the shooting or any other specific threats, a claim that JFE could have foreseen the mass shooting is not plausible. The Complaint, as pled, does not describe Thang's horrific, violent actions as anything but an intervening independent cause of Fernald's injuries. For all the above reasons, Fernald's claims of negligence and negligent hiring must be **DISMISSED**.

2. *Negligent Infliction of Emotional Distress*

Fernald's claim for negligent infliction ("NIED") of emotional distress must be dismissed for the same reason as his negligence claims above. In Tennessee, a claim for negligent infliction of emotional distress requires that a plaintiff "(1) satisfy the fine elements of ordinary negligence: duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause; (2) establish a 'serious' or 'severe' emotional injury; and (3) support his or her serious or severe injury with expert medical or scientific proof." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 529 (Tenn. Ct. App. 2011) (quoting *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)) (internal citations omitted); *see also Pagliara v. Moses*, 605 S.W.3d 619, 629 (Tenn. Ct. App. 2020). As Fernald's Complaint does not state a claim for ordinary negligence as to JFE, his NIED claim must be **DISMISSED** as well.

3. *Intentional Infliction of Emotional Distress*

Fernald also asserts a claim of intentional infliction of emotional distress ("IIED"), stating that "the acts of [sic] omissions of Defendant alleged herein caused Plaintiff to suffer grievous injury and were so outrageous in character and extreme in degree as to constitute tortious intentional infliction of emotional distress." (ECF No. 1-1, 5.) In Tennessee, "the elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3)

9

resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Conduct is "outrageous" where it "has been so outrageous, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Odom v. Claiborne Cnty., Tenn.*, 498 S.W.3d 882, 887 (Tenn. Ct. App. 2016) (quoting Restatement (Second) of Torts § 46 cmt. d (1964)). The standard for outrageous conduct is high and only met in the most extreme cases. *See Doe 1 ex. Rel Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 33 (Tenn. 2005) (collecting cases).

Simply put, Fernald's complaint does not allege any outrageous conduct on the part of JFE. What Fernald suffered is obviously enough to result in serious mental injury. But the horrifying conduct described in the Complaint is attributable to Thang, not JFE. The Complaint does not make specific allegations regarding what JFE knew about Thang's history of violent behavior, it only concludes that JFE "knew or should have known that Thang presented a danger." (ECF No. 1-1, 3.) The Complaint does not state any facts that would demonstrate how or why JFE knew or should have known this fact. It does not even allege that JFE knew about Thang's allegedly violent history. It just alleges that he had such a history. Other instances in which Tennessee courts have allowed IIED claims to proceed due solely to a lack of action have required much more. For example, in *Schrick v. Durham School Services, L.P.*, the plaintiff was able to plead numerous, specific examples of a company ignoring the reckless behavior of a school bus driver who ultimately was responsible for an accident that killed six children. No. E2020-00744-COA-R10-CV, 2022 WL 1040909, at *5 (Tenn. Ct. App. Apr. 7, 2022). Fernald offers no specifics of what JFE knew or did not know and only alleges that Kroger knew of Thang's concerning behavior on the day of the shooting. He has not alleged any outrageous conduct by JFE. Accordingly, his claim for IIED must be **DENIED**.

## IV.     CONCLUSION

For the reasons above, JFE's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED** on this the 13th day of April 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
